## Polley v. Adkins, et al.

(Decided November 15, 1911.)

### Appeal from Pike Circuit Court.

Wills—Construction.—By will drawn in the form of a deed, in which testator was named as party of the first part, and his three sons, James, John and Jacob were denominated parties of the second part; testator after providing that his wife should hold a portion of the home farm sufficient for her support should she remain his widow, used the following language: "This boundary above described is a part of the Madison survey, thirteen hundred acres

to be equally divided between John, Jacob and James and the lands herein described are not to be sold or conveyed away to any person during lifetime, and after our death it is to be equally divided between the heirs of John, James and Jacob. Also having the privilege of selling to one another if desired and the sales to extend no further if any sale should be effected, the heirs shall have no claim on said land. This indenture is not to take effect until after the death of James Weddington, Sr." Held, it is evident from the instrument considered as a whole that James Weddington, Sr. intended to convey the land to his sons, John, James and Jacob, and that the word "of" between the words "heirs and John" was placed there by mistake. That being true, John, James and Jacob had the right to sell to each other, during the father's and mother's life time, and after the death of the latter, they could sell to any one and vest in the purchaser a fee simple title to the land in question.

YORK & JOHNSON for appellant.

W. H. FLANNERY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellees, Jane Adkins and others, brought this action against appellant, J. B. Polley, for the specific performance of a contract for the sale of a tract of land fully described in the petition. The petition alleges that appellees have a good title of record, and in support thereof certain deeds are filed as exhibits. Appellant, who seems to be willing to comply with the contract of sale provided appellees can vest in him a good title of record, filed a demurrer to the petition, which was overruled. Having declined to plead further, the court decreed a specific performance of the contract in question. From that judgment this appeal is prosecuted.

The solution of the question depends upon the deed from James Weddington, Sr., to James Weddington, Jr., John F. Weddington and Jacob Weddington, bearing date May 13, 1874, and which was probated as the will of James Weddington, Sr. The material parts of this deed are as follows:

"This Indenture, made and entered into this 13th day of May, 1874, by and between James Weddington, Sr., of the County of Pike and State of Kentucky, of the one part, and James H. Weddington, Jr., John F. Weddington and Jacob Weddington, of the County and State aforesaid, of the other part;

WITNESSETH—That for and in consideration of natural love and affection that the said James Weddington, Sr., has for his sons, James, John and Jacob, the parties of the second part, and for the further consideration that my wife, Nancy Weddington, shall hold and control a sufficient part for her support should she remain my widow of the home farm, boundary of land (Here follows description). This boundary above described is a part of the Madison survey thirteen hundred acres to be equally divided between John, Jacob and James and the land herein described is not to be sold or conveyed away to any person during life time and after our death it is to be equally divided between the heirs of John, James and Jacob. Also having the privilege of selling to one another if desired, and the sales to extend no further; if any sale should be effected the heirs shall have no claim on said land. This indenture is not to take effect until after the death of James Weddington, Sr. Billey Weddington heirs shall all draw fifteen hundred dollars with what has been drawn by Billey Weddington, which amounts to seven hundred and eighty-two dollars received by Billy Weddington, deceased, from the estate; also Jacob Weddington shall hold from the estate of Billy Weddington heirs the sum of $304.85 (three hundred and four dollars and 85 cents.) The remainder of the estate be paid into Jacob Weddington's hands, he acting as guardian. This shall be paid to the heirs as they become twenty-one years old. Each one's share amounting to eighty dollars allowing no interest to be paid on the money. This being my last will and deed.

"Given under my hand and seal this 14th day May, eighteen hundred and seventy-four."

It will be observed that, by the instrument in question, James Weddington, Sr., after making provision for his widow, directs that the tract of land be equally divided between his sons, John, Jacob and James. He then provides that the land should not be sold or conveyed away to any person "during life time and after our death it is to be equally divided between the heirs of John, James and Jacob." This is followed by another provision giving his devisees the privileges of selling to one another if desired, but to no one else. In case, however, a sale should be effected, he provides that the heirs should have no claim on said land. He concludes the instrument, so far as John, James and Jacob are concerned

by providing that the indenture should not take effect until after his death.

It is evident from the instrument in question, considered as a whole, that James Weddington, Sr., intended to convey the land in question to his sons, John, James and Jacob, and he further intended, as long as he and his wife lived, that they should not have the right to convey the land to a stranger, but might sell their respective portions to each other. When he uses the word "heirs" he refers to his sons, John, Jacob and James. This is made plain by the provision "if any sale should be effected the heirs shall have no claim on said land." We, therefore, conclude that the word "of" between the words "heirs" and "John" in the clause "and after our death it is to be equally divided between the heirs of John, James and Jacob," was placed there by mistake; what the grantor intended to say was: "and after our death it is to be equally divided between the heirs, John, James and Jacob." That being true, John, James and Jacob had the power during their father's and mother's life time to sell to each other; after their father's and mother's death, to sell and dispose of the property to any one, and to vest in the purchaser the fee simple title thereto.

: As it is conceded that appellees have title of record to whatever estate John, Jacob and James could convey, it follows that their title is good of record, and that the chancellor did not err in overruling appellant's demurrer to the petition and adjudging that he be required to perform his contract.

Judgment affirmed.